Lucy VIRGILIO, Personal Representative of Lawrence Virgilio; Geraldine Halderman, Personal Representative of Lt. David Halderman; Eileen Tallon, Personal Representative of Sean Patrick Tallon; Gerard J. Prior, Personal Representative of Kevin M. Prior; Catherine (Sally) Regenhard, Personal Representative of Christian Regenhard; Maureen L. Dewan–Gilligan, Personal Representative of Gerard P. Dewan; James Boyle and Barbara Boyle, Personal Representative of Michael Boyle; Edward J. Sweeney, Personal Representative of Brian Sweeney; Gerald Jean–Baptiste, Co–Personal Representative of Gerard Jean Baptiste, Jr.; Alexander Santora and Maureen Santora, Personal Representatives of Christopher Santora; Raffaella Crisci, Personal Representative of John A. Crisci; and Patricia Deangelis, Personal Representative of Thomas P. DeAngelis Plaintiffs,

v.

MOTOROLA, INC., and City of New York Defendants.

No. 03 Civ. 10156(AKH).

United States District Court, S.D. New York.

Jan. 30, 2004.

Barry A. Cohen, Cohen, Jayson & Foster, Tampa, FL, Kevin J. Darken, Christopher P. Jayson, Cohen, Jayson & Foster, P.A., Tampa, FL, Richard Salem, Salem Law Group, P.A., Tampa, FL, Cherly L. Shammas, Ellenoff Grossman & Schole, L.L.P., New York City, for plaintiffs.

Michael D. Schissel, Arnold & Porter, New York City, for defendant.

### MEMORANDUM AND ORDER

HAIGHT, Senior District Judge.

This Opinion expands upon and amplifies a ruling by this Court in the above captioned matter delivered from the bench on January 22, 2004.

## I. BACKGROUND

The original complaint in this case was filed on December 22, 2003 and was subsequently assigned to the calendar of Judge Berman by lot. Time allotted to the City of New York, the only defendant named in the original complaint, to answer had not yet elapsed when local counsel for Plaintiffs addressed and personally delivered to Judge Berman, on January 13, 2003, a letter bearing that date. In that letter Plaintiffs asked Judge Berman to transfer the case to the calendar of Judge Hellerstein. Plaintiffs' letter also advised Judge Berman that the City of New York, then the only defendant, consented to the proposed transfer. Finally, Plaintiffs asked Judge Berman to schedule an "immediate hearing" on a request for relief which I describe in detail, *infra*.[1] Letter of Cheryl Shammas, Esq., dated January 13, 2004 ("January 13 letter"), at 1.

Ordinarily, under this Court's local rules, a request by counsel that a particular case be transferred from the calendar of one Judge to that of another is submitted to the proposed transferor and transferee Judges for their approval. If both Judges agree to the transfer, the Clerk is instructed to implement the transfer. If the Judges do not agree (which rarely, if ever, occurs), the requested transfer is adjudicated by the Assignment Committee of the Board of Judges.

In the case at bar, Judge Berman was unable, because he was engaged in presiding over an ongoing trial, to give immediate attention to Plaintiffs' request for transfer. As noted, Judge Hellerstein was out of the country for three weeks and was also unavailable to consider Plaintiffs' request. In these circumstances, the matter

---

1. Plaintiffs asked Judge Berman to convene the hearing, notwithstanding their request that the case be transferred to Judge Heller- stein, because on January 13 Judge Hellerstein was out of the country.

came to the attention of the undersigned, sitting in Part I.

On the evening of January 13, 2004 I met, *ex parte*, with counsel for Plaintiffs in my Chambers. During that meeting I reviewed the original complaint. The claims alleged in the complaint filed on December 22, 2003 arise from and relate to the terrorist attacks on the World Trade Center on September 11, 2001. In consultation with counsel and with Judge Hellerstein's Chambers it was clear to me that Plaintiffs' causes of action were significantly related to other cases arising from and related to the terrorist attacks of September 11, 2001 that have been consolidated to the calendar of Judge Hellerstein and captioned "In re September 11 Litigation."

Given this relationship, I also considered several orders issued by Judge Hellerstein affecting these consolidated cases reported as *In re September 11 Litigation,* no. 21 MC 97, 2003 U.S. Dist. LEXIS 14411 (S.D.N.Y., July 22, 2003) (the "July 22, Order"), *In re September 11 Litigation,* no. 21 MC 97, 2003 U.S. Dist. LEXIS 21243 (S.D.N.Y., November 26, 2003) (the "November 26 Order"), and *In re September 11 Litigation,* no. 21 MC 97, 2003 WL 23145579, 2003 WL 23145579, 2003 U.S. Dist. LEXIS 23561 (S.D.N.Y. 2003) (the "December 19 Order"). These orders and the attendant circumstances demonstrated the need to resolve promptly Plaintiffs' request to transfer of the case. I therefore exercised my discretion as the Part I Judge, and by an Order dated January 14, 2003 on the above captioned matter (the "January 14 Order"), directed the Clerk of the Court to transfer the case from the calendar of Judge Berman to the calendar of Judge Hellerstein.

In addition to the request to transfer, Plaintiffs, in their January 13, 2004 letter, advised Judge Berman of their "anticipated, **emergency application** ... seek[ing] a hearing on the issue of [Plaintiffs'] right to proceed with this litigation while still preserving their rights under the Victim's Compensation Fund (the 'Fund')." Letter of Cheryl Shammas, Esq., dated January 13, 2004, at 1 (emphasis in original). On the latter point, Plaintiffs went on in their letter to request "an immediate hearing." *Id.* at 2. In the *ex parte* meeting with counsel for Plaintiffs conducted in my Chambers on January 13, 2003, counsel reiterated this request. Again relying on the above cited Orders by Judge Hellerstein and time pressure concerns voiced by counsel then before me, I granted this request and, by my January 14 Order, scheduled a hearing for 10:30 on January 15, 2003, the time and dated recommended by counsel. January 14 Order at 2.

On January 14, 2004, lead counsel for Plaintiffs, resident in Tampa, Florida, contacted my Chambers by telephone to withdraw Plaintiffs' request for an immediate hearing. Counsel was asked to put their request in writing. Counsel obliged in the form of a letter dated January 14, 2003. Pursuant to that letter I cancelled the scheduled hearing by an Order dated January 15, 2004 (the "January 15 Order").

On January 20, 2003 Plaintiffs filed an amended complaint, which added Motorola, Inc. as a party defendant, together with the City of New York. As of the date this amended complaint was filed the original defendant, the City of New York, had not yet filed a responsive pleading to the original complaint. In that circumstance, Federal Rule of Civil Procedure 15(a) allowed the Plaintiffs to amend their complaint once as a matter of course.

In the afternoon of January 21, 2003 Plaintiffs faxed a request for an Order to Show Cause to my Chambers for my consideration as the Judge sitting in Part I. In their proposed Order Plaintiffs requested:

1. [An Order] [p]ermitting Plaintiffs to continue their law suits against De-

fendants Motorola, Inc. and the City of New York despite having filed claims with the September 11 Victim Compensation Fund.

2. In the alternative, [an Order] staying Judge Hellerstein's Orders of July 22, 2003 and December 19, 2003, which require that cases brought by September 11 victims who have Victim Compensation Fund awards pending as of January 22, 2004 be dismissed within ten days, until this matter can be considered by Judge Hellerstein on or before February 6, 2004.

3. As a further alternative, [an Order] permitting Plaintiffs to put this case on the suspense docket of the consolidated *In Re September 11 Litigation* docket (21 MC 97)(AKH), until the general consolidated conference set by Judge Hellerstein for February 6, 2004.

4. [An Order] [p]ermitting Plaintiffs to file Exhibit 2 to the Amended Complaint *in camera;* and

I signed the proposed Order on January 21, 2004 and scheduled its return for January 22, 2004 at 12:00 p.m.

At 12:00 p.m. on January 22, 2004 I heard an oral argument on the Order to Show Cause. Plaintiffs were represented by local counsel and by lead counsel, who were admitted to practice in this Court *pro hac vice.* The City of New York was represented by the Office of the Corporation Counsel for the City of New York. Motorola was represented by retained counsel.

After receiving the aid and benefit of arguments delivered by counsel, I issued an oral ruling from the bench. The necessity for an immediate ruling on that date was precipitated by externally executed time pressure produced by dates of election established by the Victim's Compensation Fund, Title IV, 49 U.S.C. § 40101

(2002) (the "Fund"), as interpreted and enforced by and under the authority of the Fund's Special Master. One potentially critical date affecting Fund applicants was January 22, 2004, the very date of the hearing. In order to give Plaintiffs, all of whom are potential applicants to the Fund, information potentially critical for decisions that matured at the end of January 22, 2004, I issued a ruling from the bench, stating that a more detailed opinion would be filed during the following week. This is that opinion.

## II. DISCUSSION

### A. Jurisdiction

At the January 22, 2004 hearing, counsel for Motorola represented to the Court that Motorola had not been served with the amended complaint by which they were added as a Defendant. January 22, 2004 Transcript ("Tr.") at 29. In response to a question from the Court, counsel for Plaintiff provided details of their efforts to serve Motorola. Tr. at 37. Plaintiff offered, at that time, to provide evidence of service, if necessary. Counsel for Motorola made this inquiry unnecessary by submitting the company to personal jurisdiction. Tr. at 38. Counsel for the City of New York did not contest proper service. On this basis, I asserted jurisdiction over the parties.

■ Neither Defendant has made a motion to dismiss the above captioned case for lack of subject matter jurisdiction. In fact, at the oral argument conducted on January 22, 2004 counsel for the City of New York acknowledged that the Court does have jurisdiction over Plaintiffs' claims against the City. Nevertheless, this Court is under an independent obligation to consider the existence *rel non* of subject matter jurisdiction. *See Capron v. Van Noorden,* 2 Cranch 126, 6 U.S. 126, 127, 2

L.Ed. 229 (1804) ("it was the duty of the Court to see that they had jurisdiction, for the consent of parties could not give it."); *Wynn v. AC Rochester,* 273 F.3d 153, 157 (2d Cir., 2001) ("Parties cannot confer subject matter jurisdiction where the Constitution and Congress have not. The absence of such jurisdiction is non-waivable; before deciding any case we are required to assure ourselves that the case is properly within our subject matter jurisdiction.").

To discharge this duty, the Court posed questions to counsel for Plaintiffs at the January 22, 2004 hearing relating to an apparent problem with the assertion of subject matter jurisdiction made in their complaint. In the first paragraph of the original complaint in this matter, filed December 22, 2004, in paragraphs 3(h) through 3(n) of the Affirmation in Support of the Order to Show Cause, signed by Cheryl L. Shammas, Esq., and filed by Plaintiffs in support of their proposed Order to Show Cause ("Affirmation"), and again in oral argument on January 22, 2003 (Tr. at 9,10) Plaintiffs characterize their claims against the City of New York as a civil action to recover collateral source obligations. Specifically, Plaintiffs assert that, in their Amended Complaint, Count One, relying on New York Labor Law § 27–a, and Counts One, Two, and Three relying on New York General Municipal Law § 205–a, seek to recover collateral source obligations owed by the City to New York City firefighters. *See* Amended Complaint at 10–13; Affirmation at 6,7.

By bringing an action to recover a collateral source obligation, Plaintiffs have compromised their claim on the jurisdiction of this Court. In paragraph seven of their Amended Complaint Plaintiffs state that "[t]he jurisdiction of this Court is invoked pursuant to Section 408(b)(3) of Public Law 107–42 (Air Transportation and System Stabilization Act)" (hereafter

referred to as the "ATSSSA"). The section to which Plaintiffs refer reads:

The United States District Court for the Southern District of New York shall have original and exclusive jurisdiction over all actions brought for any claim (including any claim for loss of property, personal injury, or death) resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001.

While Plaintiffs' claims surely do result from and relate to the terrorist attacks of September 11, 2001, the apparently expansive grant of exclusive jurisdiction is not without limits. Specifically, Section § 408(c) provides that "[s]ubsections (a) and (b) do not apply to civil actions to recover collateral source obligations." Therefore, the exclusive grant of jurisdiction to the federal courts found in § 408(b)(3) does not apply to actions to enforce collateral source obligations, such as that brought by Plaintiffs against the City of New York. It follows, that, barring an alternative source of federal subject matter jurisdiction, the Court must dismiss Plaintiffs' claims seeking recovery of collateral source obligations. *See Associated Aviation Underwriters v. Arab Ins. Group,* No. 02 Civ. 4983, 2003 WL 1888731, 2003 U.S. Dist. LEXIS 6254 (S.D.N.Y., April 16, 2003) (finding that suits to recover monies owed on reinsurance policies but related to events on September 11, 2001 are actions to recover collateral source obligations and declining to take jurisdiction on that basis); *Canada Life Assurance Co. v. Converium Ruckversicherung,* 210 F.Supp.2d 322 (S.D.N.Y., 2002) (declining to assert jurisdiction over September 11, 2001 related action to recover collateral source obligations).

■ Counsel for the City of New York suggested a potential solution to this jurisdictional problem, arguing that Plaintiffs' claims were not, in fact, actions to "recover

collateral source obligations" within the meaning of the statute. Tr. at 26. *See e.g.* ATSSSA §§ 402(6), 405(c)(3)(B)(i), and 408(c).

The City has an obvious interest in making this argument, given the potential impact of the waiver provision in the ATSSSA, § 405(c)(3)(B)(i), which reads in its entirety:

Upon the submission of a claim under th is title, the claimant waives the right to file a civil action (or to be a party to an action) in any Federal or State court for damages sustained as a result of the terrorist-related aircraft crashes of September 11, 2001. The preceding sentence does not apply to a civil action to recover collateral source obligations, or to a civil action against any person who is a knowing participant in any conspiracy to hijack any aircraft or commit any terrorist act.

While Plaintiffs concede that the waiver provision would apply to suits against the City as a general matter, they contend that it does not apply to their claims in particular because theirs is a "civil action to recover collateral source obligations." If I were to accept the City's view that Plaintiffs' claims are not "civil actions to

recover collateral source obligations," then the City would have an affirmative defense of immunity derived from Plaintiffs' waiver of their right to pursue a civil action secondary to their submission of claims to the Victim's Compensation Fund.

■ However, the City's professed acceptance of subject matter jurisdiction cannot create that jurisdiction. *See Capron* and *Wynn, supra.* Further, while for reasons stated *infra* I am not persuaded that Plaintiffs' civil action is one to recover collateral source obligations within the meaning of § 405(c)(3)(B)(i), for the purposes of evaluating subject matter jurisdiction I must consider Plaintiffs' allegations under the "well pleaded complaint" rule propagated by the Supreme Court and the Second Circuit.[2] Within these confines I can look no farther than the complaint as Plaintiffs cast it when determining whether or not the case, as pleaded, falls under the subject matter jurisdiction of this Court.[3] *See e.g. Louisville and Nashville Railroad v. Mottley*, 211 U.S. 149, 152–153, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *Taylor v. Anderson*, 234 U.S. 74, 34 S.Ct. 724, 58 L.Ed. 1218 (1914); *Caterpillar v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *Oklahoma*

2. The well pleaded complaint rule has been propagated in cases where subject matter jurisdiction is sought as a function of some federal question presented by a pleading. In the normal case of federal question jurisdiction a federal law animates the claims found in a pleading in some fashion or another. Here that federal law granting jurisdiction to this Court will, after having achieved this initial purpose, give way to state law on cases of liability and damages. Just as a federal court sitting in diversity is usually faced with claims determined by state law, most claims, the present ones included, that assert causes of action arising from or relating to the terrorist attacks on September 11, 2001 will be determined by state law. It seems to this Court, however, that this circumstance does not affect the application of the well pleaded complaint rule in this case. Assuming that

the statutory grant of jurisdiction found in § 408(b)(3) is constitutional, any cases brought under its umbrella will have, paraphrasing Article III, Section 2 of the United States Constitution, arisen under the laws of the United States. The fact that, once risen, the case will not rely on federal law for guidance as to substantive merits issues is of, at the most, academic interest.

3. I note now, as I did at the January 22, 2004 hearing, that if I am mistaken in my application of the well pleaded complaint rule in the present analysis then my later finding that Plaintiffs' claims against the City do not form an action to recover collateral source obligations would make § 408(c) inapplicable in this case, allowing the Court to take jurisdiction over Plaintiffs' claims against the City under § 408(b)(3).

*Tax Commission v. Graham,* 489 U.S. 838, 109 S.Ct. 1519, 103 L.Ed.2d 924 (1989); *Perpetual Securities, Inc. v. Tang,* 290 F.3d 132, 136–140 (2nd Cir.2002). If a court determines that a case presented to it on the basis of its original jurisdiction is not within "the original jurisdiction of the United States district courts" then it must dismiss or remand the case. *Franchise Tax Board of California v. Construction Laborers Vacation Trust,* 463 U.S. 1, 8, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

 The well pleaded complaint rule is, in this context, a term of art. It speaks not to a presumption of proper form or of merit but to a presumption that a plaintiff is "master of the claim." *Caterpillar* at 392, 107 S.Ct. 2425. Under this presumption, for a federal court to assert jurisdiction over a claim "it must appear, at the outset, from the declaration of the bill of the party suing, that the suit is of [a federal] character." *Tennessee v. Union & Planters' Bank,* 152 U.S. 454, 464, 14 S.Ct. 654, 38 L.Ed. 511. The original complaint filed in the above captioned matter characterized Plaintiffs' claims against the City as "an action to recover a statutory collateral source obligation." At the January 22 oral argument and in their Affirmation, Plaintiffs make it clear that their claims against the City are of this character. Under the well pleaded complaint rule the Court appears bound to accept Plaintiffs' characterization of their own claims. So doing puts Plaintiffs' claims against the City outside the exclusive grant of jurisdiction found in 408(b)(3). Without another source of jurisdiction, the Court would seem bound to dismiss Plaintiffs claims against the City.

 The City's contention that Plaintiffs do not accurately characterize their own claims does not remedy the jurisdictional problem created by Plaintiffs' complaint. The City's proposal would require the Court to consider the merits of a potential defense of immunity that the City will, most assuredly, raise as an affirmative defense against Plaintiffs' claims. Under the well pleaded complaint rule, however, a "plaintiff's claim itself must present a federal question 'unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.'" *Skelly Oil v. Phillips Petroleum,* 339 U.S. 667, 672, 70 S.Ct. 876, 94 L.Ed. 1194 (1950) (quoting *Taylor v. Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724, 58 L.Ed. 1218 (1914)). The Court may not, then, consider the City's criticism of Plaintiffs' characterization of their own claims in order to remedy a pleading that is deficient as to subject matter jurisdiction.

 The situation here is importantly distinguishable from the more familiar case where initial pleadings make sufficient claims of subject matter jurisdiction. In those circumstances a court may, and should, test representations and characterizations drafted into the complaint in order to assure itself that a plaintiff has not, through artful but hollow pleading, brought before a federal court a claim that is not, in fact, within the proper jurisdiction of the federal courts. Similarly, a federal court may dismiss a claim that is "patently without merit," thereby destroying jurisdiction. *Duke Power Co. v. Carolina Env. Study Group,* 438 U.S. 59, 70, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978).

The well pleaded complaint rule dictates, however, that a court may not inquire and act in the opposite direction, examining and dismissing potentially meritless claims in order to gain jurisdiction. This may seem odd, but the limitation imposed by the well pleaded complaint rule and the presumption that a plaintiff is master of his or her complaint has as much to do with institutional logic as it does legal principle. If a complaint, on its face, estab-

lishes a claim for federal jurisdiction, then it will achieve the preliminary goal of putting the claim before a federal court. The court can then proceed to investigate the merits of the claim and, if the court finds some claims wanting, take appropriate action. If, in this preliminary review of the merits, a court takes action that destroys jurisdiction established by the complaint, then it is obliged to dismiss or remand the case. Alternatively, if a complaint, on its face, fails to establish a basis for subject matter jurisdiction, then the merits therein can never be considered by the court. Any inquiry or action would be without authority.

While the normal case in which this specter raises its head finds a defendant trying to create federal jurisdiction where a plaintiff has, through artful pleading, avoided federal jurisdiction by making state law claims only, this Court can see no way, in principle or law, to distinguish this case. The well pleaded complaint rule creates a presumption that plaintiffs, as masters of their complaints, have chosen to characterize their claims as they have for reasons that they alone have the initial authority to weigh. Given this presumption, a court may not add or subtract from a complaint presented to it for the purposes of gaining jurisdiction that is not created by the complaint itself. Similarly, a Court may not anticipate potential defenses to create jurisdiction for itself, no matter how certain it is that these defenses will be raised. Here, Plaintiffs may not have fully appreciated the limits imposed by § 408(c) on the § 408(b)(c) grant of subject matter jurisdiction. They have, as a result, filed a pleading that artfully, though perhaps unintentionally, avoids the jurisdiction of this Court. I may not remedy the situation by making a preliminary ruling on the merits of the City's anticipated immunity defense, despite the City's urging to the contrary.

Even under the well pleaded complaint rule, it might be argued that Plaintiffs' characterization of their claims as efforts to recover collateral source obligations are, themselves, efforts made in "anticipation of avoidance of" an immunity defense that Plaintiffs foresee that the City might affirmatively raise. While this may be an accurate characterization of Plaintiffs' motives, it fails to appreciate the guidance provided by cases applying the well pleaded complaint rule cited above. Specifically, it misses the distinction between investigating representations made in a complaint in order to defeat jurisdiction and investigations embarked upon in order to create jurisdiction. To test Plaintiffs' characterization of their claims against the City as actions seeking to recover collateral source obligations would be to do the latter, an activity that is forbidden by law and logic. Moreover, the Court is not convinced that Plaintiffs' choice to characterize their claims as they have is without substantial legal effect. As pleaded, Plaintiffs' decision to cast their claims against the City as an action to recover a statutory collateral source obligation owed by the City of New York to New York City firefighters will do more than decorate Plaintiffs' claim or provide security against a potential defense. Their choice will likely affect duties of proof and provide Plaintiffs with legal opportunities that they might not otherwise have. Even were I empowered to, then, I would be loathe to find their claims "patently without merit" for the purposes of determining jurisdiction.

By the foregoing analysis, the Court seems obliged to dismiss Plaintiffs' claims against the City of New York pursuant to § 408(c). Plaintiffs do not, however, characterize their claims against Motorola as part of a civil action to recover collateral source obligations. Therefore, Plaintiffs properly avail themselves of the jurisdic-

tional grant in § 408(b)(3) with respect to their claims against Motorola.

■ At the January 22, 2004 hearing, counsel for Plaintiffs, after noting the Court's jurisdiction over claims against Motorola, argued that the claims against the City and the claims against Motorola are interrelated. Tr. at 19. Based upon this contention, counsel argued that Plaintiffs' cause of action should not be bifurcated. *Id.* Later on, counsel for Plaintiffs pointed out that "the amended complaint refers to actions that are concerted in nature." Tr. at 34. Counsel argued that these claims against both Defendants jointly were not brought to recover a collateral source obligation. *Id.* Counsel concluded that these joint claims provided additional reason not to parse off their claims against the City. *Id.*

I find these arguments persuasive. While Plaintiffs' claim of concert between Defendants comes only at the end of the complaint, it enjoys at least a narrative dominance in Plaintiffs' cause of action. It establishes a context for evaluating and appreciating Plaintiffs' claims against the City and Motorola individually. Beyond this, there are obvious overlaps in Plaintiffs' probable burdens of proof on their various claims. Specifically, Plaintiffs' claims against both Defendants will likely require that Plaintiffs establish certain alleged deficits in the design and function of Motorola XTS 3500 radios, as well as the circumstances under which these radios allegedly came to be used by firefighters present in at the World Trade Center on September 11, 2001 and the alleged shortcomings of the devices that Plaintiffs say were made apparent to all who were paying attention by earlier incidents. These are but a few areas of significant interrelation that demonstrate that Plaintiffs' claims against the City seeking recovery of collateral source obligations are so closely related to their claims against Motorola

individually and the Defendants jointly that they form part of the same case and controversy. Since, pursuant to § 408(b)(3), this Court has original and exclusive jurisdiction over claims against Motorola individually and against the Defendants jointly, the Court will, relying upon under 28 U.S.C. § 1367, assert supplemental jurisdiction over the claims against the City of New York that Plaintiffs characterize as a civil action to recover collateral source obligations.

## B. The First Form of Requested Relief

Plaintiffs' first form of requested relief is for "[an Order] [p]ermitting Plaintiffs to continue their law suits against Defendants Motorola, Inc. and the City of New York despite having filed claims with the September 11 Victim Compensation Fund." Order to Show Cause at 2. While it is not entirely clear from the text of their proposed Order to Show Cause what Plaintiffs hope the Court will do by way of this request, the accompanying Affidavit in Support of the Order to Show Cause provides useful clarification. There it is argued that Plaintiffs should be allowed to pursue both their claims with the Fund and this lawsuit because the waiver provision of the September 11th Victim Compensation Fund of 2001, § 405(c)(3)(B)(i), does not apply to Plaintiffs' claims against the Defendants in this case. At the January 22, 2004 hearing I expressed the view that "the plaintiffs' claims against both the City and Motorola are subject to the limitation on civil actions provided for in Section 405(c)(3)(B)(i) of the statute." Tr. at 43. To reach this conclusion it was necessary to address the merits of Plaintiffs' contention that the waiver provision does not apply to their claims against the City, Motorola, and both Defendants jointly. I now provide more extensive explanation of the rationale underlying my January 22, 2004 conclusion.

### 1. The Waiver Provision Applies to Plaintiffs' Case Against Motorola

█ It is worth repeating, in this context, the language of § 405(c)(3)(B)(i) of the ATSSSA, which reads:

Upon the submission of a claim under this title the claimant waives the right to file a civil action (or to be a party to an action) in any Federal or State court for damages sustained as a result of the terrorist-related aircraft crashes of September 11, 2001. The preceding sentence does not apply to a civil action to recover collateral source obligations, or to a civil action against any person who is a knowing participant in any conspiracy to hijack any aircraft or commit any terrorist act.

It is undisputed that Plaintiffs' action against Motorola is not one to recover collateral source obligations. Therefore, an initial reading of the statute would suggest that this waiver provision forbids Plaintiffs from obtaining what their Order to Show Cause seeks, namely, the privilege to pursue litigation against Motorola in civil court while concurrently filing a claim under the Fund.

In Plaintiffs' Affirmation In Support of their proposed Order to Show Cause, they suggest two reasons why this may not be so. First, they argue that the purpose of the ATSSSA was to "prevent the destruction of the nation's commercial aviation industry," and consequently that the waiver of civil action in § 405(c)(3)(B)(i) must be interpreted in light of this primary purpose. Affirmation at 5, 6. Second, Plaintiffs note that in the ATSSSA and in subsequent amendments, Congress chose to limit the liability of specific defendants, namely air carriers, airline related entities (such as aircraft manufacturers and airport sponsors), and the City of New York. These limitations on liability are promulgated in Section 408(a) of the Act.

According to Plaintiffs, the limitations on liability set forth in § 408(a) demonstrate that Congress interpreted the facially broad language of § 405(c)(3)(B)(i) to, in fact, be limited to precluding suits only against entities whose liability Congress had chosen to limit. That is to say, Plaintiffs argument is that the general waiver found in § 405 only applies when a party chooses to file suit against a defendant whose liability is limited by § 408. Because § 408 does not limit the liability of Motorola specifically, Plaintiffs argue that they should be entitled to pursue litigation against Motorola while also filing actions under the Victims Compensation Fund.

Plaintiffs' argument relies upon a necessary and erroneous inference. The inference that must be true for Plaintiffs to succeed is that Congress chose to limit the liability of certain specific defendants in § 408 because those were the only defendants against whom Congress meant § 405 to apply. This conflated interpretation of §§ 405 and 408 is not valid based on a reading of the plain language of the statute.

In point of fact, the ATSSSA serves at least two distinct purposes. One of them is to provide some protection for potential *defendants* who might find themselves driven to bankruptcy by lawsuits brought against them that arise from and relate to the tragic events of September 11, 2001. Another purpose is to provide potential *plaintiffs* with an alternative to litigation, allowing an opportunity to obtain compensation for their losses without running the inherent risks and bearing the inevitable costs associated with litigation. While the strategies adopted by the Act to pursue these two purposes are mutually supporting (providing an alternative to litigation does provide some protection for potential defendants and limitations on liability insert additional risks of litigation that make

an alternative more attractive or necessary), the purposes themselves are entirely separable. Limiting liability would have, of itself, provided ample protection for potentially vulnerable defendants. Likewise, the Victim's Compensation Fund would have, standing alone, provided an alternative to litigation.

The structure of the Act itself reflects these separable purposes. § 405 governs the eligibility requirements for obtaining compensation from the Fund. As specified by the waiver provision, one of these requirements is to waive the right to file a civil action in any federal or state court for damages sustained as a result of the September 11 terrorist attacks. If, upon a careful evaluation of her options under § 405, a potential plaintiff decides that her most prudent course of action would be to forgo a claim on the Fund and instead continue with litigation, then the inquiry moves on to § 408. Under this section, all parties are given fair warning that judgments against certain individual defendants, if obtained and if necessary, will be reduced to the limits of these defendants' liability insurance coverage.[4]

§ 408, then, governs limitations on liability that, by practice and logic, are only worth noting once a potential plaintiff has elected not to pursue the alternative to litigation addressed by, *inter alia*, § 405. It is not necessary to speculate on the reasons Congress had for limiting the liability of the particular entities identified in § 408. What is clear is that Plaintiffs have failed to demonstrate that Congress's only, or primary, reason for doing so was to determine who can benefit from the waiver provision in § 405. They cannot make such a demonstration because it is simply not the case.

In their Affirmation in Support of the Order to Show Cause, Plaintiffs properly note that when the language of a statute is ambiguous, the Court must focus on the "broader context" and "primary purpose" of the statute. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 344, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997); *Castellano v. City of New York*, 142 F.3d 58, 67 (2d Cir.1998). Plaintiffs contend that the waiver language in § 405 of the ATSSSA is ambiguous and, therefore, must be interpreted in light of what Plaintiffs allege is the Act's primary purpose: to protect the commercial aviation industry. To support the claim that this is the primary purpose of the ATSSSA, Plaintiffs reference comments made by members of Congress in the course of drafting the ATSSSA. Notably, Plaintiffs reference statements by Congressman Dan Young of Alaska, who stated during floor debate that the ATSSSA was designed "to address the threat to the continued stability and viability of our U.S. air transportation system," and "to ensure the continued operation of our air transportation system." 147 Cong. Rec. H 5894 (Sept. 21, 2001). Plaintiffs also reference a statement made by Senator Kay Bailey Hutchinson of Texas, who noted that the Act was an "effort of the U.S. Congress, working with the President, to shore up the aviation industry in our country." 147 Cong. Rec. S 9589–01 (Sept. 21, 2001). From this evidence, Plaintiffs conclude that the waiver provision cannot be read to preclude Plaintiffs' dual action in applying for Fund relief and also pursuing litigation against Motorola, who is, admittedly, not primarily in the commercial aviation industry.

This argument fails for two reasons. First, the language of the statute is not ambiguous. The language of § 405 clearly

---

4. "Judgments against the City of New York shall not exceed the greater of the city's insurance coverage or $350,000,000." ATSSSA § 408(a)(3).

requires the waiver of civil actions against any defendant, even those whose liability is not limited by § 408.[5] Second, even if the language was ambiguous, it is not, as stated *supra*, the case that the only purpose of the ATSSSA was or is to protect the aviation industry. Congressional remarks make clear that the ATSSSA also serves the goal of providing expeditious compensation to victims as an alternative to tort actions. See 147 Cong. Rec. S. 9594 (Sept. 21, 2001) (remarks of Sen. McCain) ("These victims and their families may, but are not required to, seek compensation from the Federal fund instead of through the litigation system."); id., at S 9595 (remarks of Sen. Hatch) (The VCF "will help ensure that injured people receive money and receive it faster than they otherwise would if left to pursue claims through litigation."); id., at S 9599 (remarks of Sen. Leahy) ("Filing a claim under the program will preclude other civil remedies."); 147 Cong. Rec. H 5914 (Sept. 21, 2001) (remarks of Rep. Conyers) ("individuals may elect to pursue compensation from the VCF or a damages action under the ATSSSA").

For the foregoing reasons, Plaintiff's request to continue their lawsuit against Motorola while concurrently pursuing a claim under the Victim's Compensation Fund is denied.

*2. The Waiver Provision Applies to Plaintiffs' Case Against the City of New York*

■ Earlier in this Opinion, in the context of evaluating the authority of this Court to entertain any issues of substance in this case, I declined to consider the merits of Plaintiffs' assertion that their claims against the City should not be subject to the waiver provision of

§ 408(c)(3)(B)(i). Having asserted jurisdiction over all claims in the present action, I now must entertain questions that I could not then in order to evaluate Plaintiffs' first requested form of relief as it would apply to Plaintiffs' claims against the City.

Although it is repetitious, I will quote again the waiver provision of the ATSSSA, § 408(c)(3)(B)(i), which reads, in its entirety:

> Upon the submission of a claim under this title, the claimant waives the right to file a civil action (or to be a party to an action) in any Federal or State court for damages sustained as a result of the terrorist-related aircraft crashes of September 11, 2001. The preceding sentence does not apply to a civil action to recover collateral source obligations, or to a civil action against any person who is a knowing participant in any conspiracy to hijack any aircraft or commit any terrorist act.

Based upon the statute itself and regulations promulgated by the Special Master, Judge Hellerstein has previously determined, in the context of the consolidated docket pending before him, that, under the waiver provision, a claimant "will have waived his right to sue, or to maintain his suit when that filing, or submission, [with the Victim's Compensation Fund] is substantially complete as determined by the Special Master's Claims Evaluator or January 22, 2004, whichever is earlier, and not before then." December 19 decision at *9. In their Order to Show Cause and again at the January 22, 2004 hearing Plaintiffs voiced an immediate, time-sensitive concern that claims they may have filed or intended to file with the Fund would provide the City and Motorola with affirma-

---

**5.** Excepting, of course, "civil action[s] to recover collateral source obligations" and actions "against any person who is a knowing participant in any conspiracy to hijack any aircraft or commit any terrorist act." ATSSSA § 408(c)(3)(B)(i).

tive defenses of immunity by way of § 405(c)(3)(B)(i). Plaintiffs sought to remedy this concern in their first proposed form of relief.

In the first paragraph of the original complaint in this matter, filed December 22, 2003, in paragraphs 3(h) through 3(n) of the Affirmation in Support of the Order to Show Cause, signed by Cheryl L. Shammas, Esq., and filed by Plaintiffs in support of their proposed Order to Show Cause ("Affirmation"), and again in oral argument on January 22, 2003 (Tr. at 9,10) Plaintiffs argue that any claims they might submit or have submitted to the Fund should not require them to waive their right to pursue their claims against the City because they form a "civil action to recover collateral source obligations" analogous to a civil action to recover a life insurance policy. Specifically, Plaintiffs assert that, in their amended Complaint, Count One, relying on New York Labor Law § 27–a, and Counts One, Two, and Three relying on New York General Municipal Law § 205–a, seek to recover collateral source obligations owed by the City to firefighters. *See* Amended Complaint at 10–13; Affirmation at 6, 7. If Plaintiffs are correct in their characterization of these claims then they are entitled to the first form of relief proposed in the Order to Show Cause. If they are not correct then they are not so entitled. Because I find that Plaintiffs' claims against the City do not fit the definition of "civil action to recover collateral source obligations" within the meaning of these words in the ATSSSA[5] I hold that Plaintiffs' claims

against the City are subject to the waiver provision in § 405(c)(3)(B)(i). It follows that I must decline to grant Plaintiffs' first form of proposed relief with respect to their claims against the City.

In the ATSSSA Congress defines collateral source as "all collateral sources, including life insurance, pension funds, death benefit programs, and payments by Federal, State, or local governments related to the terrorist-related aircraft crashes of September 11, 2001." ATSSSA § 402(6). Plaintiffs assert that their tort claims against the City fall within this definition because New York Municipal Law § 205–a obliges the City to compensate Plaintiffs for any negligent or wrongful actions by the City or its agents that resulted in injury and death of New York City firefighters on September 11, 2001. Affirmation at 7, 8. Plaintiffs further contend that any payments made by the City as a result of a judgment entered in Plaintiffs' favor on the present tort action would be "payments" by a "local government[ ] related to the terrorist-related aircraft crashes of September 11, 2001." ATSSSA § 402(6). *Id.* In further support of their position, Plaintiffs analogize between the present tort claim and a claim on a life insurance policy, the latter being specifically named in the definition of "collateral source" provided in ATSSSA § 402(6). Affirmation at 7, 8.

Congress defined "collateral source" in the ATSSSA, § 402(6), as "all collateral sources, including life insurance, pension funds, death benefit programs, and pay-

---

5. I emphasize here, as I did on January 22, 2004, that my holding on this point is limited to the present case, the present facts, and the present context, principally jurisdictional, in which I am also asked by Plaintiffs to take preliminary declaratory action. I hold as I do only for the purposes of answering the immediate and time-sensitive questions put to me as the Judge sitting in Part I. I do not intend that my holding on this point should become the law of the case for all contexts in which this or similar issues may arise. I certainly do not intend this holding to affect the remaining cases on Judge Hellerstein's consolidated docket or other litigation arising from or related to the terrorist attacks on September 11, 2001.

ments by Federal, State, or local governments related to the terrorist-related aircraft crashes of September 11, 2001." That definition does not include tort claims, such as the one at bar, that allege and seek to prove wrongful action that results in injury or death. The familiar interpretive principle of *ejudsem generis* dictates that "where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned." Black's Law Dictionary, 5th edition, page 464 (citations omitted). Taking note of the statutory definition of "collateral source" in § 402(6), it is clear that Congress meant for all "payments by Federal, State, or local governments" to be of a kind with "life insurance, pension funds, [and] death benefit programs."

As counsel for the City acknowledged, a case brought by a firefighter or his heir in pursuit of a contractual right to an annuity benefit would be of a kind with the examples listed in § 402(6). Tr. at 27, 28. A tort claim seeking to establish wrongdoing in order to win a judgment is not, however, of a kind with actions in pursuit of entitlements under insurance polices and death benefit programs.

The key distinction that Plaintiffs miss in their argument and in their analogy is between an action designed to enforce an entitlement and one designed to establish an entitlement. As its title suggests, New York General Municipal Law § 205–a creates an "[a]dditional right of action to certain injured or representatives of certain deceased firefighters." To the extent that the law creates an entitlement, it is an entitlement to sue parties whose "neglect, omission, willful or culpable negligence," N.Y. Gen. Mun. Law § 205–a(1), results in

the injury or death of a firefighter. The law protects firefighters from some common law defenses, but it still requires a proof of negligence or other culpable wrongdoing. *See O'Connell v. Kavanagh,* 231 A.D.2d 29, 662 N.Y.S.2d 1 (N.Y.A.D. 1st, 1997); *Kenavan v. City of New York,* 70 N.Y.2d 558, 523 N.Y.S.2d 60, 517 N.E.2d 872 (1987).

In contrast to tort cases such as these, which require proof in order to create a judgment, actions to recover collateral source obligations are actions to *recover* an entitlement previously created by statute or by contract. These actions do not *create* the entitlement. Plaintiffs right to sue under New York law does not create an entitlement to receive funds or a complementing obligation to pay. Plaintiffs may, if successful on their lawsuit, be entitled to compensation on a favorable judgment. Under the waiver provisions of the ATSS-SA, however, they will have forgone any claim on the Fund by pursuing their tort suit.

Prior decisions by federal courts that have considered the extent and meaning of "collateral source" in the context of the ATSSSA also indicate that Plaintiffs' tort claim is not an action to recover collateral source obligations. Where courts have regarded legal claims arising from and related to the September 11, 2001 terrorist attacks as actions to recover collateral source obligations, the benefit sought has been a pre-existing entitlement of a kind with those enumerated in the ATSSSA. *See e.g. Canada Life Assurance Co. v. Converium Ruckversicherung,* 335 F.3d 52, 56–58 (2nd Cir., 2003) (discussing "collateral source obligations" as rights of contract formed by existing insurance indemnification policies); *Associated Aviation Underwriters v. Arab Ins. Group,* No. 02 Civ. 4983, 2003 WL 1888731, 2003 U.S. Dist. LEXIS 6254 (S.D.N.Y., April 16,

2003) (suits to recover monies owed on reinsurance policies are actions to recover collateral source obligations); *Hickey v. City of New York (In re World Trade Ctr. Disaster Site Litig.*), 270 F.Supp.2d 357, 362 (S.D.N.Y., 2003) ("collateral source obligations" (for example, insurance or other such items which, under the Act, are to be deducted from claims against the Victim Compensation Fund)"). Plaintiffs' present action is unlike any of these actions. It is a tort action that seeks a judgment based on wrongdoing.

Finally, Plaintiffs argue that any recovery they might receive from their suit against the City would offset awards from the Fund, thereby proving that their action is one to recover collateral source obligations. *Id.* at 8. This "proof" indulges in the common logical fallacy of question begging, however. Plaintiffs assume that which they seek to prove, namely that theirs is a civil action to recover collateral source obligations. If it is, then recovery on the suit would offset a Fund award. If, however, it is not, then no offset will occur because Plaintiffs will have had to choose between their civil action and a claim on the Fund. Thus, there would be no Fund claim to offset.

For the foregoing reasons I am of the view that, within the confines of the present motion, Plaintiffs' action against the City is not one to recover collateral source obligations within the meaning of ATSSSA § 405(c)(3)(B)(i). Therefore, the waiver provision applies to Plaintiffs' claims against the City of New York. On this basis I decline to grant Plaintiffs' first proposed form of relief with respect to their claims against the City.

**3. The Waiver Provision Applies to Plaintiffs' Case Against the Defendants Jointly**

Plaintiffs have not argued, in their papers or at the January 22, 2004 hearing, that their claims against the Defendants jointly should qualify for any particular exception to the waiver provision at § 408(c)(3)(B)(i). Given my conclusion that the waiver provision applies to Plaintiffs' claims against each of the Defendants individually, there is no reason why it should not also apply to claims against the Defendants jointly. I therefore conclude that the waiver provision applies to Plaintiffs claims against the Defendants jointly. Consistent with this holding, I must decline to grant Plaintiffs' first proposed form of relief with respect to their claims against the Defendants jointly.

**C. The Second Form of Requested Relief**

In an alternative to their first proposed form of relief, Plaintiffs ask this Court to stay "Judge Hellerstein's Orders of July 22, 2003 and December 19, 2003, which require that cases brought by September 11 victims who have Victim Compensation Fund awards pending as of January 22, 2004 be dismissed within ten days, until the matter can be considered by Judge Hellerstein on or before February 6, 2004." By contrast to Plaintiffs' first proposed form of relief, this proposal does not raise any concerns time pressure. Assuming that the situation is as Plaintiffs portray it in their request,[6] under Federal Rule of Civil Procedure 6(a) the earliest date upon which Plaintiffs' fears might be

**6.** The Court does not, in any way, mean to endorse this assumption. It seems clear that, at the very least, the dismissal that Plaintiffs fear is not automatic. It will require an affirmative action on the part of Judge Hellerstein. Assuming, then, that Judge Hellerstein's July 22, 2003 Order applies to active cases such as the one presently at bar (another assumption this Court does not mean to endorse), Plaintiffs will have ample opportunity to ask Judge Hellerstein himself to stay his own hand. This Court has neither the inclination nor the authority to stay it for him.

 

realized is February 5, 2004. The concerns presented in Plaintiffs' second form of requested relief are, thus, not immediate. Given this, the Court sees no reason to take immediate action on Plaintiffs' second request for relief and declines to do so.

## D. The Third Form of Requested Relief

Plaintiffs propose, as a further alternative, that the Court place their case on the suspense docket created by Judge Hellerstein for some cases related to the September 11, 2001 terrorist attacks. By my oral Order on January 22, 2004 and by a separate written Order dated January 22, 2004 I granted this request "provisionally and in principle." In the written Order I further ordered, consistent with the oral Order, that "the above captioned cause of action will be moved to the suspense docket maintained by Judge Hellerstein when Plaintiffs have met the procedural requirements for such an application set forth by Judge Hellerstein in his July 22, 2003 Order reported at *In re September 11 Litigation*, no. 21 MC 97, 2003 U.S. Dist. LEXIS 14411 (S.D.N.Y., July 22, 2003)." January 22, 2004 Order at 2. My written Order of January 22, 2004 did not disturb my oral Order of January 22, 2004 and the present Order does not disturb, in any way, my written Order of January 22, 2004.

## E. The Fourth Form of Requested Relief

At the January 22, 2004 hearing the parties agreed to hold in abeyance the motion to file Plaintiffs' Exhibit 2 *in camera*. Consistent with this agreement I decline to grant Plaintiffs' fourth proposed form of relief without commenting on the merits or demerits of their request.

## III. CONCLUSION

For the foregoing reasons the first, second, and fourth proposed forms of relief set forth in the January 21, 2004 Order to Show Cause issued by this Court are denied. The third form of proposed relief is granted consistent with this Court's January 22, 2004 Order in the above captioned case.

It is SO ORDERED